UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION
**CIVIL ACTION NO. 1:21-cv-712**

| | |
|---|---|
| DURWARD PATRICK FRANCIS, JR., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Case No. 1:21-cv-712 |

## COMPLAINT

COMES NOW the plaintiff, Durward Patrick Francis, Jr., by and through the undersigned counsel, and files his Complaint against the United States Department of Veterans Affairs based upon the following:

## PARTIES

1. Plaintiff, Durward Patrick Francis, Jr. ("Mr. Francis") is an adult individual and resident of Rolesville, North Carolina.

2. Mr. Francis served in the United States Air Force from May 15, 1968 to April 19, 1972.

3. On April 19, 1972, Mr. Francis was honorably discharged from the military.

4. Defendant is the United States, specifically, the Department of Veteran Affairs.

5. The Department of Veteran Affairs provides veterans with various benefits and services, including health care services.

1

6. Defendant operates health and medical centers across the United States, including the Durham VA Medical Center located at 508 Fulton St in Durham, North Carolina ("Durham VAMC").

7. Defendant employs all of the healthcare providers at Durham VAMC.

8. Defendant acts through its agents, employees, servants, workmen, partners, and joint venturers.

9. Pursuant to 28 U.S. Code § 2674, Defendant has waived sovereign immunity with respect to the claims in this Complaint.

## JURISDICTION AND VENUE

10. Mr. Francis brings this action under the Federal Tort Claims Act (28 U.S.C. § 2671, et seq.) (the "FTCA").

11. Pursuant to the requirements under the FTCA, on November 23, 2020, Mr. Francis served a written claim upon the Department of Veterans Affairs within two years after his claim accrued.

12. On July 15, 2021, Defendant denied Mr. Francis' claim.

13. Mr. Francis has exhausted his administrative remedies.

14. Mr. Francis compiled all medical records pertaining to the alleged negligence that were available to him after reasonable inquiry and provided them to Dr. William Fong, MD, who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence. Dr. Fong reviewed the medical records and is willing to testify that the medical care did not comply with the applicable standard of care. His affidavit is attached as Exhibit A.

15. Jurisdiction is conferred on this Court by 28 U.S.C. § 1346(b).

16. Venue is proper pursuant to 28 U.S.C. § 1402(b).

# FACTS

17. Mr. Francis is a veteran who suffers from above optimal cholesterol and diabetes.

18. On January 11, 2017, Mr. Francis visited the Durham VAMC where he was seen by VA Hospital Clinical Pharmacist, Dr. Alev Gulum, Pharm.D, (the "Pharmacist"). On January 11, 2017, Mr. Francis' cholesterol was 193mg/DL, with LDL of 95mg/DL. According to the American Heart Association ("AHA"), optimal cholesterol is less than 150mg/DL with LDL of less than 100mg/DL. LDL is the "bad cholesterol."

19. On January 11, 2017, the Pharmacist prescribed 40mg of Atorvastatin to Mr. Francis, which is considered a high intensity treatment by the AHA and should be prescribed with caution in the elderly according to the Food and Drug Administration ("FDA"). [1] See Exhibit B for FDA warnings.

20. The Pharmacist did not advise Mr. Francis of the risk of myopathy nor that he should promptly report "unexplained and/or persistent muscle pain, tenderness, or weakness," as suggested by the FDA.

21. On February 12, 2018, Mr. Francis returned to the Durham VAMC to evaluate his medication. Durham VAMC employees tested his cholesterol, and it was 184, a decrease from the prior year, but his LDL was 119mg/DL.

22. On February 12, 2018, the Pharmacist increased Mr. Francis' Atorvastatin dose from 40mg to 80mg, the maximum dose.

---

[1] The FDA recommends that Atorvastatin should be prescribed with caution in the elderly. Advanced age persons (≥65 years) are predisposed to myopathy and Atorvastatin should be discontinued if myopathy is diagnosed or suspected. The FDA warns "Advise patients to promptly report to their physician unexplained and/or persistent muscle pain, tenderness, or weakness."

23. Again, the Pharmacist failed to advise Mr. Francis of the risk of myopathy nor that he should promptly report "unexplained and/or persistent muscle pain, tenderness, or weakness," as suggested by the FDA.

24. In March of 2019, Mr. Francis began losing control of the muscles in his right leg. This became apparent to him due to his more frequent falls. Within weeks he found he could only make the leg move by lifting the leg of his pants.

25. Twice in April, he sought medical attention for his right leg at the Durham VAMC, but no one recognized the myopathy caused by the Atorvastatin.

26. By May of 2019, Mr. Francis could not exercise or work his normal hours.

27. On or around May 7, Mr. Francis was sent to an orthopedic surgeon for his leg. The Durham VAMC orthopedic surgeon performed an MRI, but was unable to determine the cause of the myopathy. The progress note, signed by Sharyn Gates, PA and acknowledged by Samuel Wellman, MD, had assessed Mr. Francis' right lower leg extremity weakness. There was no acknowledgement from these 2 providers which indicated that they had considered Atorvastatin-induced myopathy.

28. Also in May, Mr. Francis had a pharmacy-apixaban monitoring follow-up. That prescriber also did not recognize the overdose of Atorvastatin that was causing the myopathy.

29. In June of 2019, Mr. Francis had neurology consultation. The Durham VAMC neurologist noted the atrophy that was developing in the leg and stated, "He has significant loss of muscle mass in the right quadriceps." Further, Mr. Francis explained that he was falling at home and was using a cane to try to compensate for the leg. Again, there was no diagnosis.

30. In July of 2019, Mr. Francis saw a Durham VAMC physical therapist and neurologist. Still, no one recognized the overdose of Atorvastatin, nor could anyone help revive his paralyzed leg.

31. In September of 2019, his left leg began to lose strength. He had another consultation with the Durham VAMC neurologist who could not attribute his L2-L3 radiculopathy to the myopathy in the legs.

32. An electromyography (EMG) nerve conduction study was performed by Durham VAMC neurologist Dr. Natalia Gonzalez on September 3, 2019. The conclusion was that nerve conduction was abnormal: "(1) There is electrodiagnostic evidence of a subchronic right predominant L3 radiculopathy with evidence of ongoing innervation. (2) There is electrodiagnostic evidence of a distal, sensorimotor polyneuropathy with mixed demyelinating and axonal features…."

33. A neurosurgery summary evaluation from September 30, 2019, by Durham VAMC Dr. Steven Cook states "I have reviewed MRI with patient at L2/3 stenosis is central and mild to moderate on my review. His alignment and curvature is normal. Dr. Cook's assessment further provides: "I do not see any stenosis significant enough to explain his EMG findings or his symptoms. … The <u>central stenosis is unlikely to be causing any radicular symptoms</u> as there is no obvious disc herniation or acute change. I do think he may still be dealing with <u>a myopathic or other neuropathic process</u>…"

34. Dr. Cook then ordered laboratory work for assessing muscle enzyme inflammation. Creatine phosphokinase (CK or CPK) and C-reactive protein (CRP) values from September 30, 2019 were within normal limits, with a high normal sedimentation rate of 19.

5

35. In October of 2019, he left a message with a Durham VAMC nurse complaining that he was now struggling with both legs. He was locking both knees to take steps, and struggling to complete his normal activities.

36. On November 19, 2019, Dr. Jessica Duran, Cardiology fellow, evaluated Mr. Francis. Dr. Jessica Duran, clinically associated the leg symptoms as the direct result of taking high dose Atorvastatin. This was the first documentation from any VA medical providers that Mr. Francis' lower leg weakness may be attributed to Atorvastatin. The progress note as written: "Last LDL (cholesterol) 95 (from) 1/2017…Trial discontinuation of atorvastatin given reported proximal LE weakness and possibility of statin induced myopathy. If symptoms improve/resolve off statin, will discuss trial(iz)ing a different statin or cholesterol-lowering agent."

37. After that visit, Mr. Francis ceased taking the Atorvastatin per Dr. Duran's recommendation.

38. Since coming off the Atorvastatin, Mr. Francis' legs have improved muscle control and he is slowly gaining his strength back.

39. Due to the myopathy in his legs, Mr. Francis fell on multiple occasions and suffered discomfort in his legs. Additionally, because his muscles were not in use, his quadricep muscle atrophied. Further, Mr. Francis could not perform his job duties as an air conditioner repair man while his legs were not functioning.

40. A true and accurate copy of an affidavit by Dr. William Wong, MD, evaluating Mr. Francis' treatment is attached hereto and incorporated by reference as Exhibit A.

41. Mr. Francis continues to suffer pain, mental distress, and long term harm, as a result of the negligence of the Durham VAMC physicians.

42. Mr. Francis continues to suffer from injuries that are permanent and will require continued medical treatment in the future, as a result of the negligence of Durham VAMC physicians.

## **COUNT ONE**

(Medical Malpractice)

43. Each of the foregoing paragraphs are incorporated herein by reference.

44. Mr. Francis and the Defendant had a patient-health care provider relationship.

45. The Defendant and its agents, employees, servants, workmen, partners, and joint venturers owed Mr. Francis a duty to act as reasonably prudent health care providers in the same or similar specialties would have acted in the same or similar circumstances.

46. At all times relevant, Defendant's agents, employees, servants, workmen, partners, and joint venturers were acting within the scope of their office or employment.

47. The defendant was negligent and committed medical malpractice in the following respects:

   a. They failed to warn Mr. Francis that the medication they prescribed could cause myopathy.

   b. They failed to recognize that the medication they prescribed caused myopathy in Mr. Francis' legs.

   c. They failed to timely recognize that the medication they prescribed caused myopathy in Mr. Francis' legs.

   d. They failed to properly intervene in Mr. Francis' condition.

   e. They failed to timely intervene in Mr. Francis' condition.

   f. They failed to properly treat Mr. Francis' condition.

   g. They failed to timely treat Mr. Francis' condition.

   h. They failed to properly appreciate Mr. Francis' condition.

i. They failed to timely appreciate Mr. Francis' condition.

j. They failed to properly appreciate Mr. Francis' anatomy.

k. They failed to timely appreciate Mr. Francis' anatomy.

l. They failed to properly interpret Mr. Francis' laboratory studies.

m. They failed to timely interpret Mr. Francis' laboratory studies.

n. They failed to timely communicate with one another.

o. They failed to timely communicate with other healthcare providers.

p. They caused avoidable myopathy to Mr. Francis' legs.

q. They failed to offer Mr. Francis adequate treatment options.

r. They failed to timely work up Mr. Francis' condition.

s. They failed to properly work up Mr. Francis' condition.

t. They failed to refer Mr. Francis for treatment outside of the VAMC system.

u. They failed to timely investigate Mr. Francis' myopathy.

v. They provided substandard care and treatment to Mr. Francis when they knew, or should have known, that such substandard care and treatment would cause, or would likely cause, serious injury and/or the death of Mr. Francis.

w. If additional evidence is adduced during the course of discovery or trial showing that the defendants and/or their employees, agents, or servants were negligent in other ways, Plaintiff reserves the right to amend, alter, or expand the allegations set forth herein up to and during trial.

48. As a direct and proximate result of the negligence of the Defendant and its employees, agents, servants, workmen, partners, and joint venturers, Mr. Francis has suffered, is suffering, and will continue to suffer in the future serious and permanent injuries.

49. If the Defendant had complied with the applicable standard of care, Mr. Francis would have avoided his injuries, damages and outcome.

50. Mr. Francis seeks to be fairly compensated for his injuries and damages to the fullest extent permitted under the law.

WHEREFORE, Plaintiff, by counsel, prays for relief against the Defendant as follows:

1. All issues of fact be tried before a jury;

2. Plaintiff be awarded at least $110,000 in damages from Defendant.

3. For any further and other such relief as this Court deems necessary and proper.

This is the __ day of August, 2021.

<u>BA FOLK, PLLC</u>

_____
J. Denton Adams
P.O. Box 90426
Raleigh, NC 27675
jadams@bafolk.com
(o) 919-825-1250
(f) 919.882.8297
N.C. Bar No. 44160

## VERIFICATION

STATE OF NORTH CAROLINA

COUNTY OF WAKE

Durward Patrick Francis, being duly sworn, deposes and says:
I am over 18;
I have read the foregoing Complaint;
I have personal knowledge of the events described in the Complaint; and
The contents of the Complaint are true and accurate to the best of my knowledge.

*[signature]*
Durward Patrick Francis J r, DPF

Sworn to and subscribed before me this
the 18 day of August, 2021.

*[signature]*
Signature

Brooks Bagley
Printed Name

NOTARY PUBLIC

MY COMMISSION EXPIRES: May 1, 2025

(NOTARY SEAL)

BROOKS BAGLEY
Notary Public, North Carolina
Wake County
My Commission Expires
May 01, 2026

10